1
2
3
4
5                        UNITED STATES DISTRICT COURT

6                        EASTERN DISTRICT OF WASHINGTON

7    YESENIA K.,
                                          NO. 1:19-CV-3262-TOR
8                        Plaintiff,
                                          ORDER GRANTING PLAINTIFF'S
9         v.                             MOTION FOR SUMMARY
                                          JUDGMENT
10   ANDREW M. SAUL, Commissioner
     of Social Security,
11
                         Defendant.
12

13        BEFORE THE COURT are the parties' cross-motions for summary

14   judgment (ECF Nos. 13 and 15). Plaintiff is represented by D. James Tree.

15   Defendant is represented by Kathryn Miller. This matter was submitted for

16   consideration without oral argument. The Court has reviewed the administrative

17   record and the parties' completed briefing and is fully informed. For the reasons

18   discussed below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's

19   motion.

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

1    defined generally as the claimant's ability to perform physical and mental work

2    activities on a sustained basis despite his or her limitations (20 C.F.R. §

3    416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

4         At step four, the Commissioner considers whether, in view of the claimant's

5    RFC, the claimant is capable of performing work that he or she has performed in

6    the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

7    capable of performing past relevant work, the Commissioner must find that the

8    claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

9    performing such work, the analysis proceeds to step five.

10        At step five, the Commissioner considers whether, in view of the claimant's

11   RFC, the claimant is capable of performing other work in the national economy.

12   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

13   must also consider vocational factors such as the claimant's age, education and

14   work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

15   Commissioner must find that the claimant is not disabled.  20 C.F.R. §

16   416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

17   analysis concludes with a finding that the claimant is disabled and is therefore

18   entitled to benefits.  *Id.*

19        The claimant bears the burden of proof at steps one through four above.

20   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 4, 2017, Plaintiff filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of January 1, 2010. Tr. 169-77. The application was denied initially, Tr. 106-14, and on reconsideration, Tr. 118-24. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on October 4, 2018. Tr. 38-67. On November 28, 2018, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 4, 2017, the application date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: PTSD, personality disorder, major depressive disorder, and mild intellectual disability. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found Plaintiff had the RFC to perform a full range of work at all exertional limits but with the following nonexertional limitations:

> [S]he can understand and remember 1-3 step instructions, standard work-like procedures and regular work locations; has sufficient concentration, persistence, or pace to complete simple, routine tasks in two-hour increments for a normal workday and workweek with normal breaks; can work at a regular but not fast production pace; should have only brief superficial interactions with coworkers and the public; should not be required to work as part of a team; is able to accept supervision; can adapt to normal, routine changes in the workplace.

Tr. 20.

At step four, the ALJ found Plaintiff was not capable of performing past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry laborer, industrial sweeper/cleaner, and hand packager. Tr. 26. The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from March 4, 2017, through November 28, 2018, the date of the ALJ's decision. Tr. 27.

On September 10, 2019, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

Act.  Plaintiff raises the following issues for this Court's review:

    1.  Whether the ALJ properly weighed Plaintiff's symptom testimony;

    2.  Whether the ALJ properly weighed the medical opinion evidence; and

    3.  Whether the ALJ properly evaluated the Listing of Impairments.

ECF No. 13 at 2.

## DISCUSSION

### A.  Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit her symptom testimony.  ECF No. 13 at 17-21.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7)

1   any other factors concerning an individual's functional limitations and restrictions

2   due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

3   C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

4   individual's record," "to determine how symptoms limit ability to perform work-

5   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

6          The ALJ found Plaintiff's impairments could reasonably be expected to

7   cause the alleged symptoms; however, Plaintiff's statements concerning the

8   intensity, persistence, and limiting effects of those symptoms were not entirely

9   consistent with the evidence.  Tr. 21.

10          *1.   Improvement with Treatment*

11          The ALJ found Plaintiff's symptom testimony was less reliable because it

12   was inconsistent with evidence that showed Plaintiff's symptoms improved when

13   she was compliant with treatment.  Tr. 22-23.  The effectiveness of treatment is a

14   relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

15   416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

16   Cir. 2006) (determining that conditions effectively controlled with medication are

17   not disabling for purposes of determining eligibility for benefits); *Tommasetti v.*

18   *Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response

19   to treatment can undermine a claimant's complaints of debilitating pain or other

20   severe limitations).  Here, the ALJ noted that Plaintiff's mental health conditions

1    showed signs of improvement when she was compliant with medications and

2    attending counseling.  Tr. 22; *see* Tr. 454 (May 18, 2017: Plaintiff's mood

3    symptoms were well-controlled with medication); Tr. 590 (July 20, 2017:

4    Plaintiff's mood disorder symptoms and nightmares resolved with medication); Tr.

5    627 (October 11, 2017: Plaintiff's counselor reported Plaintiff was "making

6    tremendous progress" after six months of counseling).  Plaintiff challenges the

7    ALJ's conclusion by noting that Plaintiff reported excessive daytime sleepiness

8    with medication and that she continued to exhibit poor judgment.  ECF No. 13 at

9    19 (citing Tr. 454-55, 586-87).  However, the record indicates that Plaintiff's

10   daytime fatigue "resolved completely" with a medication adjustment.  Tr. 581.

11   Additionally, where evidence is subject to more than one rational interpretation,

12   the ALJ's conclusion will be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

13   Cir. 2005).  The ALJ reasonably concluded that Plaintiff's symptoms showed

14   improvement with treatment.  Tr. 22.  This finding is supported by substantial

15   evidence.

16          2.   *Failure to Follow Treatment Recommendations*

17          The ALJ found Plaintiff's symptom testimony was less reliable because

18   Plaintiff failed to comply with recommended treatment.  Tr. 22-23.  In order to

19   obtain benefits, a claimant generally must follow prescribed treatment if the

20   treatment is expected to restore the claimant's ability to work.  20 C.F.R. §

416.930(a).  "A claimant's subjective symptom testimony may be undermined by

an unexplained, or inadequately explained, failure to . . . follow a prescribed course

of treatment."  *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (internal

quotations and citations omitted).  Failure to assert a reason for not following

treatment "can cast doubt on the sincerity of the claimant's [symptom] testimony."

*Id*.

Here, the ALJ noted that despite evidence of improvement with treatment,

Plaintiff discontinued her psychiatric medication and stopped attending counseling

against medical advice.  Tr. 23; *see* Tr. 552 (January 23, 2018: Plaintiff reported

self-discontinuing prazosin one month ago and reported sleeping well without it);

Tr. 545 (February 27, 2018: Plaintiff did not appear for four doctor appointments

and reported she had "done fine" since discontinuing her medications); Tr. 543

(March 1, 2018: Plaintiff reported she had not taken her medications since her

January 22, 2018 overdose); Tr. 542 (April 2, 2018: Plaintiff withdrew from

therapy "because life is too stressful and she hasn't taken her medication since she

overdosed anyway").  Plaintiff argues that she withdrew from treatment due to

medication side effects.  ECF No. 13 at 19-20.  However, as noted *supra*, the

record indicated Plaintiff's excessive fatigue resolved with a medication

adjustment.  Tr. 581.  The ALJ reasonably concluded that Plaintiff's withdrawal

from treatment along with her assertions that she was fine were inconsistent with

her symptom allegations.  Tr. 23.  This finding is supported by substantial

evidence.

### 3.  Lack of Supporting Evidence

The ALJ found Plaintiff's symptom testimony was not supported by the

evidence.  Tr. 23.  An ALJ may not discredit a claimant's symptom testimony and

deny benefits solely because the degree of the symptoms alleged is not supported

by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the

objective medical evidence is a relevant factor, along with the medical source's

information about the claimant's pain or other symptoms, in determining the

severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at

857; 20 C.F.R. § 416.929(c)(2).  Mental status examinations are objective

measures of an individual's mental health.  *Buck v. Berryhill*, 869 F.3d 1040, 1049

(9th Cir. 2017).  Here, the ALJ noted that Plaintiff frequently presented with

normal mood, affect, judgment, and insight on her mental status examinations.  Tr.

23; *see* Tr. 710 (October 31, 2017: judgment and insight intact, mood normal,

affect appropriate); Tr. 717 (November 6, 2017: same); Tr. 723 (November 17,

2017: grossly oriented to person, place, and time; attention and concentration

mildly decreased); Tr. 732 (March 1, 2018: judgment and insight intact, mood

normal, affect appropriate); Tr. 736 (March 16, 2018: same); Tr. 745 (July 19,

2018: same).  The ALJ reasonably concluded that this evidence was inconsistent with Plaintiff's allegations of disabling mental health conditions.  Tr. 23.  This finding is supported by substantial evidence.

The ALJ also found that Plaintiff's specific allegation of difficulty interacting with authority figures was not supported by the evidence.  Tr. 23.  The ALJ noted that Plaintiff reported that she "only [has] difficulty getting along with authority figures who were strict."  Tr. 23 (citing Tr. 214 (it varies on how strict the authority is)).  The ALJ considered evidence that Plaintiff was arrested in 2018 on an outstanding warrant after she "got mouthy and wouldn't shut up" when interacting with police.  Tr. 23 (citing Tr. 560).  The ALJ concluded that Plaintiff's alleged difficulty interacting with authority figures was not supported because "[t]his was the only report of [Plaintiff] having difficulty interacting with law enforcement during the period at issue."  Tr. 23.  The ALJ accounted for this difficulty by limiting her RFC to brief superficial interactions with the public and coworkers and restricting her from jobs involving teamwork.  No error has been shown.

### 4.  *Work History*

The ALJ found Plaintiff's symptom testimony was less reliable in light of Plaintiff's sporadic work history.  Tr. 21.  Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a

1   claimant's testimony that she is unable to work.  *Thomas*, 278 F.3d at 959; 20

2   C.F.R. § 416.929(c)(3).  When considering a claimant's contention that he cannot

3   work because of his impairments, it is appropriate to consider whether the claimant

4   has not worked for reasons unrelated to his alleged disability.  *See Tommasetti*, 533

5   F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (sufficient

6   reasons for disregarding subjective testimony included stopping work for

7   nonmedical reasons).  Here, the ALJ noted that Plaintiff had a sporadic work

8   history and left past work for reasons unrelated to disability.  Tr. 21; *see* Tr. 179-80

9   (Plaintiff's earnings history); Tr. 201 (Plaintiff reported that her past work ended

10  because of her medical conditions and for other reasons); Tr. 823 (July 25, 2013:

11  Plaintiff reported that she could not maintain full-time work because she was

12  pregnant and there were no jobs in her town); Tr. 338 (Plaintiff did not become

13  sober until late 2016).  The ALJ concluded that Plaintiff's poor employment

14  history before her alleged disability onset date was attributable to factors other than

15  disability.  Tr. 21.

16          While it is true that benefits in this case would not be payable prior to

17  Plaintiff's filing date in March 2017, Plaintiff alleged that her conditions became

18  disabling on January 1, 2010.  Tr. 15; *see* Tr. 169.  The ALJ noted the difference

19  between these dates and considered the full record, specifically noting that

20  Plaintiff's alleged disability onset date was in 2010.  Tr. 15.  Accordingly, the

1    evidence cited by the ALJ from after Plaintiff's alleged onset date cannot provide

2    substantial evidence to support the ALJ's finding that Plaintiff had a sporadic work

3    history prior to her alleged onset date.  The ALJ's observation that Plaintiff had a

4    sporadic work history during a period in which she alleged she was disabled, even

5    if benefits were not payable at the time, does not provide clear and convincing

6    reason to discredit her symptom testimony.  However, the ALJ's other observation,

7    that Plaintiff attributed her inability to work to factors other than her impairments,

8    is supported by substantial evidence.

9        *5.  Inconsistent Statements*

10       The ALJ found Plaintiff's symptom testimony was less reliable because the

11   evidence showed Plaintiff made inconsistent statements regarding her impairments.

12   Tr. 22.  In evaluating a claimant's symptom claims, an ALJ may consider the

13   consistency of an individual's own statements made in connection with the

14   disability-review process with any other existing statements or conduct under other

15   circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  "A single

16   discrepancy fails, however, to justify the wholesale dismissal of a claimant's

17   testimony."  *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).  Here, the

18   ALJ noted that Plaintiff inconsistently reported the reason that she lost her job at

19   Ponderosa.  Tr. 22; *compare* Tr. 48 (Plaintiff testified that she quit this job because

20   she was being sexually harassed) *with* Tr. 543 (Plaintiff told her counselor that she

lost this job because she was incarcerated for two days). The ALJ reasonably

concluded that these statements were inconsistent. Tr. 22. However, this single

inconsistency, neither of which attribute losing her job to a disability, is

insufficient to discredit Plaintiff's symptom allegations generally. *Popa*, 872 F.3d

at 906-07. This was not a clear and convincing reason to discredit Plaintiff's

symptom testimony.

### 6. *Situational Stressors*

The ALJ found Plaintiff's symptom testimony was less reliable because of

the number of situational stressors Plaintiff reported in the record. Tr. 22. If a

claimant suffers from limitations that are transient and result from situational

stressors, as opposed to resulting from a medical impairment, an ALJ may properly

consider this fact in discounting Plaintiff's symptom claims. *See Chesler v.*

*Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (symptom testimony properly

rejected in part because "the record support[ed] the ALJ's conclusion that

[plaintiff's] mental health symptoms were situational"). An ALJ may reasonably

find a claimant's symptom testimony less credible where the evidence "squarely

support[s]" a finding that the claimant's limitations are attributable to situational

stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014

WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would

likely be able to maintain full-time employment but for the 'overwhelming' stress

1  caused by caring for her family members"). However, "because mental health

2  conditions may presumably *cause* strained personal relations or other life stressors,

3  the Court is not inclined to opine that one has caused the other based only on the

4  fact that they occur simultaneously." *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*,

5  No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in

6  original).

7         Here, the ALJ found that Plaintiff's counseling notes largely documented

8  Plaintiff's issues with interpersonal relationships and moving back and forth

9  between a boyfriend's home and her mother's home rather than documenting

10  reports of specific symptom complaints of depression and PTSD. Tr. 22; *see* Tr.

11  596 (June 22, 2017: Plaintiff's therapy session focused on intimate relationship

12  addiction); Tr. 594 (June 27, 2017: Plaintiff's therapy session focused on trauma

13  history and Plaintiff's unstable housing); Tr. 574 (October 4, 2017: Plaintiff's

14  therapy session focused on her relationship with her boyfriend); Tr. 568 (October

15  20, 2017: Plaintiff's therapy session focused on her relationship with her boyfriend

16  and her unstable housing situation); Tr. 558 (January 19, 2018: Plaintiff's therapy

17  session focused on her relationship with her boyfriend); Tr. 602 (January 22, 2018:

18  Plaintiff reported overdosing because her boyfriend kicked her out of his house).

19  Substantial evidence supports the existence of situational stressors in the record.

20  However, this record does not "squarely support" a finding that Plaintiff's

1  limitations are attributable to those situational stressors instead of mental

2  impairments, as opposed to a finding that her impairments and situational stressors

3  are interrelated.  Accordingly, this was not a clear and convincing reason to

4  discredit Plaintiff's symptom testimony.

5      *7.  Daily Activities*

6      The ALJ found Plaintiff's symptom testimony was inconsistent with her

7  reported daily activities.  Tr. 23-24.  The ALJ may consider a claimant's activities

8  that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

9  spend a substantial part of the day engaged in pursuits involving the performance

10  of exertional or non-exertional functions, the ALJ may find these activities

11  inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597,

12  603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not

13  vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a

14  claimant's symptom claims when the claimant reports participation in everyday

15  activities indicating capacities that are transferable to a work setting" or when

16  activities "contradict claims of a totally debilitating impairment."  *Molina*, 674

17  F.3d at 1112-13.  Additionally, the ability to care for others without help has been

18  considered an activity that may undermine claims of totally disabling pain.

19  *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a basis for

20  the ALJ to discredit the Plaintiff's symptom claims, the record must identify the

1    nature, scope, and duration of the care involved and this care must be more than a
2    "one-off event." *Trevizo*, 871 F.3d at 675-76.

3        Here, the ALJ noted that Plaintiff's daily activities included caring for her
4    children part-time with assistance from her mother; spending time with family;
5    preparing food once for a Cinco de Mayo celebration; making jewelry, blankets,
6    and cakes in her spare time; driving and riding in cars; listening to music; going to
7    the movies when she could afford it; eating out once per week; shopping in stores
8    once per month; and performing household chores once per week.  Tr. 23-24; *see*
9    Tr. 44-46, 51-55, 209-13, 348, 380, 485, 545, 584.  The ALJ concluded that these
10    activities were inconsistent with Plaintiff's alleged limitations and generally
11    suggested Plaintiff could perform simple work and tolerate superficial interactions
12    with others.  Tr. 24.  However, the ALJ failed to identify any specific limitation
13    that Plaintiff alleged which was inconsistent with such limited activities as
14    performing chores once per week, shopping once per month, or preparing food on
15    one occasion.  *Id.*  Additionally, the ALJ's finding relies generally on the types of
16    limited personal activities that the Ninth Circuit has found are not inherently
17    inconsistent with disability when they do not consume a substantial portion of the
18    claimant's day.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This
19    court has repeatedly asserted that the mere fact that a plaintiff has carried on
20    certain daily activities, such as grocery shopping, driving a car, or limited walking

for exercise, does not in any way detract from her credibility as to her overall

disability.").  Moreover, the ALJ did not identify any specific childcare activity

that Plaintiff performed or explain how Plaintiff's ability to care for her children

part-time and with her mother's assistance supported a finding that Plaintiff could

perform full-time simple work in a competitive setting.  Tr. 24; *see Trevizo*, 871

F.3d at 675-76.  Plaintiff's daily activities do not provide clear and convincing

reason, supported by substantial evidence, to discredit her symptom testimony.

### 8. Harmless Error

Defendant contends that any error the ALJ made in evaluating Plaintiff's

symptom testimony is harmless.  ECF No. 15 at 19-20.  A district court "may not

reverse an ALJ's decision on account of an error that is harmless."  *Molina*, 674

F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

An ALJ's error in evaluating a claimant's symptom testimony may be harmless

where the ALJ provides other reasons, supported by substantial evidence, to

discredit the claimant's testimony.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

F.3d 1155, 1162-63 (9th Cir. 2008).  "[T]he relevant inquiry in this context … is

whether the ALJ's decision remains legally valid, despite such error."  *Id.* at 1162.

Here, although the ALJ provided some legally valid reasons to discredit Plaintiff's

symptom testimony, many of the ALJ's findings were not legally valid or

supported by substantial evidence.  The ALJ's errors are so pervasive that this

Court cannot conclude that they were inconsequential to the ultimate nondisability

decision.  *Molina*, 674 F.3d at 1115.  Accordingly, the ALJ's errors are not

harmless and the ALJ is instructed to reconsider Plaintiff's symptom testimony on

remand.

**B.  Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinion of treating

therapist Debbie Miller, LMFT.  ECF No. 13 at 10-17.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, the opinion of a treating physician carries more weight than the opinion

of an examining physician, and the opinion of an examining physician carries more

weight than the opinion of a reviewing physician.  *Id.*  In addition, the

Commissioner's regulations give more weight to opinions that are explained than

to opinions that are not, and to the opinions of specialists on matters relating to

their area of expertise over the opinions of non-specialists.  *Id.* (citations omitted).

1     If a treating or examining physician's opinion is uncontradicted, an ALJ may

2  reject it only by offering "clear and convincing reasons that are supported by

3  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

4  "However, the ALJ need not accept the opinion of any physician, including a

5  treating physician, if that opinion is brief, conclusory and inadequately supported

6  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

7  (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

8  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

9  may only reject it by providing specific and legitimate reasons that are supported

10  by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a

11  nonexamining physician may serve as substantial evidence if it is supported by

12  other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041

13  (9th Cir. 1995).

14     The opinion of an acceptable medical source such as a physician or

15  psychologist is different from that of a non-acceptable medical source. 20 C.F.R. §

16  416.927(f)(1).[1]  A therapist is not an acceptable medical source. 20 C.F.R. §

17

18  [1]     Because Plaintiff's application for benefits was filed on March 4, 2017, the

19  regulations governing claims filed before March 27, 2017 apply to this case. 20

20  C.F.R. § 416.325.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

416.902(a).  The ALJ is required to consider the opinions of non-acceptable medical sources.  20 C.F.R. § 416.927(c).  The factors used to weigh the opinion of a non-acceptable medical source are the same as those used to weigh the opinion of an acceptable medical source, although not every factor will apply in every case.  20 C.F.R. § 416.927(c)(1)-(6), (f)(1).  The ALJ is only required to provide germane reasons to reject the opinion of an "other source," including that of a non-acceptable medical source.  *Popa*, 872 F.3d at 906 (citing *Molina*, 674 F.3d at 1111).

On February 1, 2018, Ms. Miller, Plaintiff's treating therapist, opined Plaintiff had moderate limitation in her ability to remember locations and work-like procedures; moderate limitation in her ability to understand and remember very short and simple instructions; marked limitation in her ability to understand and remember detailed instructions; marked limitation in her ability to carry out detailed instructions; moderate limitation in her ability to maintain attention and concentration for extended periods; marked limitation in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; moderate limitation in her ability to work in coordination with or proximity to others without being distracted by them; moderate limitation in her ability to make simple work-related decisions; moderate limitation in her ability to complete a normal workday and workweek without interruptions from

1    psychologically based symptoms and to perform at a consistent pace without an

2    unreasonable number and length of rest periods; marked limitation in her ability to

3    accept instructions and respond appropriately to criticism of supervisors; moderate

4    limitation in her ability to get along with coworkers or peers without distracting

5    them or exhibiting behavioral extremes; moderate limitation in her ability to

6    respond appropriately to changes in the work setting; moderate limitation in her

7    ability to be aware of normal hazards and take appropriate precautions; severe

8    limitation in her ability to travel in unfamiliar places or use public transportation;

9    marked limitation in her ability to set realistic goals or make plans independently

10   of others; extreme limitation in her ability to understand, remember, or apply

11   information; moderate limitation in her ability to interact with others, moderate

12   limitation in her ability to concentrate, persist, or maintain pace; that Plaintiff met

13   the Paragraph C criteria; that Plaintiff was likely to be off-task less than 12% of a

14   full-time work schedule; and that Plaintiff would likely miss one day of work per

15   month.  Tr. 619-22.  The ALJ gave Ms. Miller's opinion little weight.  Tr. 25.

16   Because Ms. Miller is a non-acceptable medical source, the ALJ was required to

17   provide germane reasons to discredit her opinion.[2]  *Popa*, 872 F.3d at 906.

18

19   [2]       The Court notes that, in addition to assigning error to the ALJ's findings,

20   Plaintiff raises several reasons why she believes the ALJ should have given greater

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25

1    First, the ALJ found Ms. Miller's opinion was not sufficiently supported or

2    explained.  Tr. 25.  Failure to provide support or explanation is a germane reason

3    to discredit opinion of nonacceptable medical source.  *Molina*, 674 F.3d at 1111-

4    12.  Additionally, "[w]hile an opinion cannot be rejected merely for being

5    expressed as answers to a check-the-box questionnaire, … the ALJ may

6    permissibly reject check-off reports that do not contain any explanation of the

7    bases of their conclusions."  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)

8    (internal citations and quotations omitted).  Here, the ALJ noted that Ms. Miller

9    did not provide any explanation for her opined limitations.  Tr. 25; *see* Tr. 619-22.

10    This is a germane reason to discredit Ms. Miller's opinion.

11    Second, the ALJ found Ms. Miller's opinion was inconsistent with

12    Plaintiff's record of improvement with treatment.  Tr. 25.  Inconsistency with the

13    medical evidence is a germane reason for rejecting other source testimony.  *See*

14

15    weight to Ms. Miller's opinion.  ECF No. 13 at 12-13.  This Court's review is

16    limited to the ALJ's findings, and the Court "may neither reweigh the evidence nor

17    substitute its judgment for that of the Commissioner."  *Blacktongue v. Berryhill*,

18    229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing *Thomas*, 278 F.3d at 954).

19    Plaintiff's arguments here amount to an invitation for this Court to reweigh the

20    evidence and are therefore not properly within the scope of review.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 26

*Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

As discussed *supra*, the ALJ noted that the record demonstrated Plaintiff showed

improvement in some symptoms when she was compliant with treatment.  Tr. 25;

*see* Tr. 454 (May 18, 2017: Plaintiff's mood symptoms were well-controlled with

medication); Tr. 590 (July 20, 2017: Plaintiff's mood disorder symptoms and

nightmares resolved with medication); Tr. 627 (October 11, 2017: Ms. Miller

reported Plaintiff was "making tremendous progress" after six months of

counseling).  Plaintiff challenges the ALJ's finding by identifying other evidence

in the record that shows Plaintiff continued to struggle with mental health

symptoms.  ECF No. 13 at 14-16.  However, where evidence is subject to more

than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400

F.3d at 679.  The ALJ reasonably concluded that the evidence showed evidence of

Plaintiff's improvement with treatment.  Tr. 25.  This is a germane reason to

discredit Ms. Miller's opinion.

Third, the ALJ found Ms. Miller's opinion was inconsistent with Plaintiff's

daily activities.  Tr. 25.  Inconsistency with a claimant's daily activities is a

germane reason to reject other source testimony.  *Carmickle*, 533 F.3d at 1163-64;

*Lewis*, 236 F.3d at 512.  As discussed *supra*, the ALJ discussed Plaintiff's daily

activities but failed to consider their limited nature.  Tr. 23-24.  Although the ALJ

concluded that Plaintiff's activities such as childcare, driving, shopping in stores,

1    and engaging in crafting activities were inconsistent with the limitations Ms. Miller

2    opined, the ALJ failed to explain how these limited activities were inconsistent

3    with the specific limitations Ms. Miller opined.  Tr. 25.  This finding is not

4    supported by substantial evidence.  Because this case is remanded for other

5    reasons, the ALJ is instructed to also reconsider Ms. Miller's opinion on remand.

6    **C.  Listing of Impairments**

7         Plaintiff contends the ALJ failed to properly assess the Listing of

8    Impairments.  ECF No. 13 at 3-10.

9         At step three of the sequential evaluation process, the ALJ must determine if

10   a claimant's impairments meet or equal a listed impairment.  20 C.F.R. §

11   416.920(a)(4)(iii).  The Listing of Impairments "describes each of the major body

12   systems impairments [which are considered] severe enough to prevent an

13   individual from doing any gainful activity, regardless of his or her age, education

14   or work experience."  20 C.F.R. § 416.925(a).  To meet a listed impairment, a

15   claimant must establish that she meets each characteristic of a listed impairment

16   relevant to her claim.  20 C.F.R. § 416.925(d).  If a claimant meets the listed

17   criteria for disability, she will be found to be disabled.  20 C.F.R.

18   § 416.920(a)(4)(iii).  The claimant bears the burden of establishing she meets a

19   listing.  *Burch*, 400 F.3d at 683.  "An adjudicator's articulation of the reason(s)

20   why the individual is or is not disabled at a later step in the sequential evaluation

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 28

1    process will provide rationale that is sufficient for a subsequent reviewer or court

2    to determine the basis for the finding about medical equivalence at step 3."  SSR

3    17-2P, 2017 WL 3928306, at *4.

4         Here, the ALJ considered whether Plaintiff met the criteria for listings 12.04,

5    12.05, 12.06, 12.08, and 12.15.  Tr. 18.  The ALJ found that Plaintiff did not meet

6    either the Paragraph B or Paragraph C criteria for the listing of mental

7    impairments.  Tr. 19.  However, the ALJ's consideration of the Listing of

8    Impairments is based on the ALJ's evaluation of evidence that the ALJ has been

9    instructed to reconsider on remand.  Accordingly, the ALJ is also instructed to

10   reconsider the Listing of Impairments on remand.  The ALJ should consider

11   whether to take testimony from a medical expert on remand to assist in this

12   reconsideration.

### CONCLUSION

13

14        Having reviewed the record and the ALJ's findings, this Court concludes the

15   ALJ's decision is not supported by substantial evidence and free of harmful legal

16   error.  On remand, the Commissioner is instructed to reconsider Plaintiff's

17   symptom testimony, the medical opinion evidence, consider taking testimony from

18   a medical expert, and conduct a new five step sequential evaluation process.

19   //

20   //

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is GRANTED.

2.  Defendant's Motion for Summary Judgment (ECF No. 15) is DENIED.

3.  The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to enter this Order, furnish copies to counsel, and **close the file**.

**DATED** May 13, 2020.



THOMAS O. RICE
Chief United States District Judge